**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISTINE HARTSHORN

      Plaintiff,

        v.

THROOP BOROUGH, ET AL.,

      Defendants.

CIVIL ACTION NO. 3:07-cv-01333

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. 67). For the reasons provided below, Defendants' motion will be granted in part and denied in part.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and pursuant to 42 U.S.C. § 2000e *et seq.*.

## BACKGROUND

Plaintiffs and Defendants have provided the following undisputed facts. Plaintiff was first employed by the Borough of Throop ("Throop" or "Throop Borough") in January 2004 when she was appointed Treasurer. (Defs.' SOF, Doc. 69 ¶ 4; Pl.'s Resp. to Defs.' SOF, Doc. 77 ¶ 4.) Two months later, on March 11, 2004, Plaintiff resigned her Treasurer position because she believed that she could not be bonded. (Defs.' SOF ¶ 5 ; Pl.'s Resp. to Defs.' SOF ¶ 5.) In May 2004, Plaintiff was, once again, hired by Throop in the position of Assistant Secretary after Elaine Morrell, the Throop Administrator and Secretary, informed the Borough Council that she was "in dire need of an assistant secretary, asap." (Defs.' SOF

¶ 3;  Pl.'s Resp. to Defs.' SOF ¶ 3.)  On July 14, 2004, after an incident where Plaintiff accused one of her bosses, Defendant James Barnick, a member of the Borough Council, of yelling at her, Defendant Barnick sent a memo to Plaintiff directing her to contact him only in writing.  (Defs.' SOF ¶ 7; Pl.'s Resp. to Defs.' SOF ¶ 7.) Plaintiff was politically active with respect to Throop Borough Council elections, and although her political ties were well known within Throop political circles, Plaintiff never had any conversations about her political activity with Defendant Barnick.  (Defs.' SOF ¶ 8; Pl.'s Resp. to Defs.' SOF ¶ 8.)

In November 2004, and again in July 2005, Plaintiff filed complaints with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination.  (Defs.' SOF ¶ 6; Pl.'s Resp. to Defs.' SOF ¶ 6.)

In September 2005, Defendant Robert Hegedus became Throop Manager (Defs.' SOF ¶ 9; Pl.'s Resp. to Defs.' SOF ¶ 9) and shortly thereafter, on September 19, 2005, Plaintiff left her position with Throop Borough on medical leave (Defs.' SOF ¶ 10; Pl.'s Resp. to Defs.' SOF ¶ 10).   While on medical leave in September 2005, Plaintiff attempted to access the Throop bank records from her home computer, but was unsuccessful in obtaining the records.  On December 2, 2005, Defendant Hegedus sent a letter to Plaintiff requesting an explanation for why her computer hard drive had been erased and, on the advice of counsel, Plaintiff did not respond.  (Defs.' SOF ¶¶ 12,13; Pl.'s Resp. to Defs.' SOF ¶¶ 12, 13.)  In a letter dated December 6, 2005, with an attached doctor's note excusing her from work through December 14, 2005, Plaintiff informed the Borough Council that she would resign from her position, effective December 14, 2005.  (Defs.' SOF ¶¶ 14, 15;  Pl.'s Resp. to Defs.' SOF ¶¶ 14, 15.)

Plaintiff filed her Complaint (Doc. 1) initiating this action on July 23, 2007.  In this

2

Complaint, Plaintiff brought seven (7) claims against the Borough of Throop, three (3) members of the Borough Council, and the former Borough Manager.  These claims included allegations of sex discrimination, retaliation, and violations of Plaintiff's rights protected by the First and Fourteenth Amendments to the United States Constitution.[1]   After the conclusion of discovery in the case, Defendants filed the current Motion for Summary Judgment (Doc. 67) on November 17, 2008, along with a corresponding Statement of Facts (Doc. 69) and Brief in Support (Doc. 71).  On December 5, 2008, Plaintiff filed an Answer to Defendants' Statement of Facts (Doc. 77) and a corresponding Brief in Opposition (Doc. 78) to Defendants' motion.  Defendants did not file a brief in reply to Plaintiff's opposition brief. Since the current motion has been thoroughly briefed, it is now ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1]

Plaintiff alleges that she suffered discrimination and retaliation as the result of both her gender and political affiliation.  While Plaintiff's Complaint is structured into seven (7) counts identifying the statutes under which she brings her claims, it does not separate Plaintiff's gender-based claims from her politics-based claims.  This lack of bifurcation is largely unproblematic because many of Plaintiff's claims identify causes of action for gender-based discrimination (Counts I-III) or for First Amendment retaliation (Counts VI and VII).  This co-mingling is noticeable, however, with respect to Plaintiff's equal protection and conspiracy arguments (Counts IV and V) where she alleges that she suffered a violation of her rights because of her gender _and_ her political activity.  The Court observes that, in the briefs supporting and opposing the current motion, the parties had difficulty targeting their arguments to the proper basis, of the particular claim being discussed, and the Court proceeds in its review mindful of this complexity.

3

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).   Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the

4

evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

**I.     Counts I, II & III: Sex/Gender Discrimination, Harassment, Retaliation, and Hostile Working Environment Under Title VII and the Pennsylvania Human Relations Act**

Count I of Plaintiff's Complaint alleges that Defendants created a hostile working

environment and both discriminated and retaliated against Plaintiff because of her sex and

her EEOC complaints detailing this discrimination. (Compl. ¶¶ 38-45.)

"Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act

make it unlawful for an employer to 'discriminate against any individual with respect to his

compensation, terms, conditions or privileges of employment because of such individual's

race, color, religion, sex or national origin.'" *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d

Cir. 2005) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "In order to fall within the purview of Title VII,

the conduct in question must be severe and pervasive enough to create an 'objectively

hostile or abusive work environment -- an environment that a reasonable person would find

hostile -- and an environment the victim-employee subjectively perceives as abusive or

hostile.'" *Id.* at 426 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).  In order

to determine whether an environment was hostile or abusive, the Court must look at

numerous factors, including "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; whether it

unreasonably interferes with an employee's work performance." *Id.*  The Third Circuit Court

of Appeals has identified the framework for evaluating hostile work environment claims:

> Five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employee suffered intentional discrimination because of their sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability.

*Id.* at 426 (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23.

Defendants argue that Plaintiff's claims fail under the *Harris* "totality of the circumstances" analysis because "there is no evidence that Plaintiff was subjected [to] pervasive discriminatory conduct due to her gender or political affiliation." (Defs.' Br. in Supp., Doc. 71, at 7.) In support of this argument, Defendants note only that Plaintiff admits that she never had any conversation with Defendant Barnick concerning her *political* affiliations. (*Id.*) Defendants provide no supporting argument or evidence supporting their motion with respect to Plaintiff's claims alleging *gender* discrimination.

The Court observes, however, that Plaintiff's Count I claim does not, in any way, involve Plaintiff's political activities or affiliations, but involves only allegations that Defendants discriminated against and retaliated against Plaintiff on the basis of her gender. As a result of what the Court assumes to be either a mischaracterization or failure to properly frame Plaintiff's Count I claim, Defendants present no arguments concerning Plaintiff's gender-related claims. However, in its review of the current motion, the Court has extensively reviewed the available evidence in this case. On the basis of this review, the Court finds that the evidence does indicate that there are genuine issues of material fact concerning whether Defendants Barnick and Hegedus subjected Plaintiff to sexual

discrimination.  The Court does not, however, find any evidence suggesting any question of material fact concerning the Borough of Throop or the other individually-named defendants.

The Court finds that the evidence clearly indicates that the Plaintiff and Defendant Barnick had an increasingly tense relationship during Plaintiff's employment with Throop. (*See e.g.*, Aug. 28, 2008 Lukasewicz Dep. Tr., Doc. 73, Ex. 8, at 199:1-201:11)(characterizing the atmosphere in the Throop Borough building during the Plaintiff's employment with Throop as extremely bad, and full of "he said, she said situations.") Moreover, the Court believes the presented evidence reveals sufficient contradictions suggesting that material facts remain in dispute concerning whether Defendant Barnick discriminated against Plaintiff because of her gender.  In particular, the Court notes that the Plaintiff testified that she perceived Defendant Barnick's alleged actions toward her to be motivated by both his political and gender biases.  (Sept. 18, 2008 Hartshorn Dep. Tr., Doc. 73, Ex. 3, at 89:8-22; 94:3-105:12; 131:15-21.) Moreover, the evidence also shows that a female member of the Throop council stated at a Borough Council meeting that Defendant Barnick "hates" women.  (*See* July 28, 2008 Barnick Dep. Tr., Doc. 73, Ex. 12, at 40:9-41:4.) In contrast, Defendant Barnick points out that he hired numerous women during his time on the Borough Council  (*Id*., at 41:6-8) and further notes that the only people who had ever accused him of treating women badly were Plaintiff and her friends (*Id*., at 54:12-14).  The Court believes that, when considering this evidence, a reasonable jury could return a verdict for the Plaintiff, and for this reason, the Court will deny Defendants' motion with respect to Plaintiff's Count I claims against Defendant Barnick.

The evidence reviewed by the Court reveals a similarly antagonistic relationship between the Plaintiff and Defendant Hegedus.  In particular, the Court notes that Defendant

Hegedus admitted in his deposition testimony that he referred to the Plaintiff in derogatory terms typically associated with the female gender.  (*See* Sept. 11, 2008 Hegedus Dep. Tr., at 66:18-23, 164:15-23) (acknowledging an exchange with Plaintiff where he referred to her as a "stripper" and "no good fucking scumbag.")  The Court also notes that Defendant Hegedus testified that he made these statements out of anger and in response to Plaintiff's accusation that he was responsible for the suicides of his first wife and son.  (*Id.* at 68:8-20, 164:24-165:11.)  In her deposition, Plaintiff expressly denied making any such statements about Defendant Hegedus' wife and son.  (Oct. 7, 2008 Hartshorn Dep. Tr., at 46:19-47:17.)  In light of the gender-related connotations in the statement Defendant Hegedus acknowledges making to Plaintiff, and in light of the parties' contrasting characterizations of the context in which this statement was made, the Court believes that the evidence presents a question of material fact concerning whether Defendant Hegedus discriminated against the Plaintiff due to her gender.  Since the Court finds that a reasonable jury could find in favor of the Plaintiff after weighing the parties' contrasting accounts, the Court will deny Defendants' motion with respect to Plaintiff's Count I claims against Defendant Hegedus.

The Court, however, finds no evidence raising a question of material fact with respect to the Borough or the other individually-named Defendants.  In her deposition, the Plaintiff testified in great detail about her interactions with Defendant Barnick leading to her EEOC complaint. (Sept. 18, 2008 Hartshorn Dep. Tr., at 89:8-22; 94:3-124:24; 131:15-21.)  The parties also developed considerable evidence concerning the allegedly discriminatory statement by Defendant Hegedus. (Sept. 11, 2008 Hegedus Dep. Tr., at 66:18-23, 164:15-23; Oct. 7, 2008 Hartshorn Dep. Tr., at 46:19-47:17.)  However, the Plaintiff did not identify any actions or statements by any of the other individually-named Defendants suggesting that

they discriminated against Plaintiff because of her gender.  Moreover, the Court finds that the Plaintiff did not elicit any evidence that Defendants Barnick's or Hegedus' allegedly discriminatory behavior constituted a custom or policy of the Borough of Throop.  *See Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 (1978) (stating that "it is when execution of a government's policy or custom. . . inflicts the injury that the government as an entity is responsible under § 1983").  Rather, the Court finds that the alleged discriminatory actions by Defendants Barnick and Hegedus were not the product of a policy, practice or custom of the Borough of Throop.  For this reason, Defendants' motion will be granted with respect to Plaintiff's Count I claims involving Defendants Throop Borough, Lukasewicz, Barone, and Musewicz.

In Counts II and III of her Complaint, Plaintiff also brought a claim of sex/gender harassment, hostile work environment, and retaliation under the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*.  Pennsylvania courts have held that challenges brought under Pennsylvania law are subject to the same analysis as those brought under the appropriate federal counterpart.  *Cerol v. Temple University of the Commonwealth System of Higher Education*, No. 07-3644, 2008 U.S. App. LEXIS 25618, at *2 (3d Cir. 2008) ("the same standards and decisional law apply to retaliation claims under both [Title VII and the Pennsylvania Human Relations Act]"); *accord Slagle v. County of Clarion*, 435 F.3d 262, 265 n.5 (3d Cir. 2006).  Accordingly, the Court will deny Defendants' motion with respect to Plaintiff's Count II and III claims pertaining to Defendants Barnick and Hegedus, and will grant Defendants' motion with respect to Plaintiff's Count II and III claims as those claims pertain to Defendants Throop Borough, Lukasewicz, Barone, and Musewicz.

9

## II.     Count IV: 42 U.S.C. § 1983 Equal Protection

In Count IV of her Complaint, Plaintiff alleges that the Defendants deprived her of equal protection under the laws on the basis of her gender and because of her opposition to Defendants' discriminatory practices.  (Compl. ¶ 56.)  Plaintiff further alleges that the Defendants consciously failed to protect Plaintiff and other females from harassment and failed to respond to complaints of harassment and discrimination such that this failure constituted a policy, custom, or pattern of subjecting females to sexual harassment, hostile working environment, discrimination, differential treatment, and deprivation of females equal protection under the law. (*Id.* ¶ 57.)  According to Plaintiff, the Defendants had a general, wide-spread, permanent, well-settled, and accepted pattern and practice of not training employees about the rights and privileges guaranteed by the United States and Pennsylvania Constitutions. (*Id.* ¶ 61.) Plaintiff claims that Defendant Throop Borough failed to take effective remedial action to stop sexual harassment and discrimination, and but for the Borough's failure to train its employees, Plaintiff would not have suffered injury.  (*Id.* ¶¶ 61-62.)  Furthermore, Plaintiff alleges that the Defendants had an ongoing and well-settled pattern and practice of retaliating based on petitioning activity, residence, political association and speech.  (*Id.* ¶ 63.)

The Equal Protection clause requires that "all persons similarly circumstanced shall be treated alike."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  "Claims for gender-based discrimination brought under the Equal Protection Clause are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)."  *Shaw v. Pittsburgh Board of Public Education*, Civil Action

No. 0-1183, 2009 U.S. Dist. LEXIS 2340, at *10 (W.D. Pa. Jan. 13, 2009); *accord Morrissey v. Luzerne County Cmty. Coll.*, 117 Fed. Appx. 809, 814 n.4 (3d Cir. 2004); *Stewart v. Rutgers, the State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997).

"Under this framework, the plaintiff must first establish a *prima facie* case of gender discrimination." *Shaw,* 2009 U.S. Dist. LEXIS 2340, at *10. "To establish a *prima facie* case of gender discrimination under the Equal Protection clause, Plaintiff must prove the existence of purposeful discrimination. Specifically, Plaintiff must prove that she received different treatment from that received by other individuals similarly situated and that the disparate treatment was based upon her gender." *Smith V. Township of East Greenwich*, 519 F. Supp. 2d 493, 506 (D.N.J. 2007). "If the plaintiff makes this *prima facie* showing, the defendant must establish a legitimate, non-discriminatory reason for the rejection/termination." *Shaw,* 2009 U.S. Dist. LEXIS 2340, at *11. "The plaintiff must then demonstrate that the defendant's proffered reason was a pretext for discrimination." *Id* To establish pretext, plaintiff 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Smith*, 519 F.Supp. 2d at 506 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

## A.    Individually-Named Defendants

In their Motion for Summary Judgment and supporting brief, Defendants characterize Plaintiff's Count IV claim solely as a "failure to train claim," (*See* Defs.' Br. in Supp., at 8) and thus, present no arguments or evidence suggesting either (1) that Plaintiff has failed to

11

establish a *prima facie* case of gender discrimination against the individually-named Defendants or (2) that these Defendants had a legitimate, non-discriminatory reason for treating Plaintiff differently than her male counterparts.

However, as the Court already discussed in greater detail in its discussion of Plaintiff's Count I, II, and III gender discrimination claims, Plaintiff has not established a *prima facie* case of gender discrimination against Defendants Lukasewicz, Barone, and Musewicz. Plaintiff has, however, elicited evidence that could allow a reasonable jury to find that Defendants Barnick and Hegedus did, as alleged, discriminate against Plaintiff due to her gender. Accordingly, the Defendants failed to show that Plaintiff is unable to establish a *prima facie* case of gender discrimination against either Barnick or Hegedus, and have not shown that no question of material fact remains concerning whether either Barnick or Hegedus deprived Plaintiff of equal protection under the laws on the basis of her gender or opposition to thier allegedly discriminatory practices. For this reason, Defendants Barnick and Hegedus are not entitled to a judgment as a matter of law. Thus, the Court will deny Defendants' Motion for Summary Judgment on Count IV of Plaintiff's Complaint with respect to Defendants Barnick and Hegedus, and will grant the motion with respect to Plaintiff's Count IV claims as they pertain to Defendants Lukasewicz, Barone, and Musewicz.

### B.    Defendant Throop Borough

Defendants' characterization of Plaintiff's Count IV claim as a "failure to train" action does, however, raise the question of whether Defendant Throop Borough is entitled to judgment as a matter of law with respect to this claim. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue."

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)).  The Supreme Court has stated that "a city must exhibit 'deliberate indifference' towards the constitutional rights of persons in its domain before a § 1983 action for 'failure to train' is permissible."  *Id.* at 389 n. 7.  "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury."  *Id.* at 391.  Furthermore, the Third Circuit Court of Appeals, when discussing *City of Canton*, has stated that "[f]ailure to adequately screen or train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 408-409 (1997)).

Defendants argue that '[t]here is no evidence that the failure to train Throop employees was either a deliberate or conscious choice."  (Defs.' Br. in Supp., at 9.) Defendants further argue that Plaintiff has failed to adduce evidence that of any pattern of violations and has failed to identify any deficiency causing the alleged constitutional injury. (*Id.* at 9-10.)

In her Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff states that "[i]t is clear that Defendants had a well-settled practice of not responding to and discouraging complaints of any type of harassment and or retaliating against those who complained."  (Pl.'s Br. in Opp., at 9-10.)  In particular, Plaintiff notes that after she and two other women filed EEOC complaints, Defendants "retorted with allegations of bad work performance, yet they did not likewise question the work performance of persons of their

13

political ilk." (*Id*. at 10.)   Plaintiff further notes that "[n]o Throop official received discrimination and constitutional training, even after complaints were filed."

The Court observes that the majority of Plaintiff's arguments concerning the Borough's alleged failure to train, including the above-quoted passage referencing "political ilk", state that she was denied her equal protection rights because of her political beliefs and affiliations. (*Id.* at 10-13.)   Count IV of Plaintiff's Complaint, however, states that she was deprived of equal protection under the laws due to her *gender* and efforts to oppose Defendants' alleged *gender*-based discrimination.   (*See* Compl., ¶ 57) (alleging that Defendants consciously failed to "protect Plaintiff and other *females* from . . . harassment" such that this failure "constituted a policy, custom and/or pattern of subjecting *females* to sexual harassment, hostile environment, discrimination, differential treatment, and refusing to take action to prevent said harassment and discrimination, thus depriving said *females* of their constitutional rights to equal protection under the law. . ..")(emphasis added).

Thus, Plaintiff's Complaint alleges that Defendants engaged in a pattern of equal protection violations on the basis of gender, but Plaintiff has subsequently failed to provide the Court with any evidence of a pattern of gender-based equal protection violations.   In short, Plaintiff alleges that Throop Borough deliberately and consciously chose not to train Borough employees with regard to gender-based discrimination, but does not identify any evidence supporting this allegation.   Furthermore, Plaintiff has not provided the Court with any evidence suggesting that a question of material fact exists concerning whether Throop made a conscious or deliberate decision not to train Borough employees with respect to sex discrimination and harassment.   For these reasons, Plaintiff's Count IV claims cannot yield liability against Defendant Throop Borough under the standard articulated by the Supreme

14

Court in *City of Canton*.  Accordingly, the Court will grant Defendants Motion for Summary

Judgment on Count IV of Plaintiff's Complaint with respect to Throop Borough.

### III.    Count V: 42 U.S.C. § 1985(3) Conspiracy

In Count V of her Complaint, Plaintiff alleges that "Defendants conspired, directly or

indirectly, to deprive plaintiff of rights and privileges granted by law and equal protection of

the laws, including Title VII of the Civil Rights Act of 1964, as amended, as well as freedom

to petition, of speech, of association and residence."  (Compl. ¶ 69.)

"42 U.S.C. § 1985(3) prohibits conspiracies predicated on 'racial, or perhaps

otherwise class-based, invidiously discriminatory animus.'" *Ridgewood Board of Education*

*v. N.E. for M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (quoting *Griffin v. Breckenridge*, 403 U.S.

88, 102 (1971)).

> In order to state a claim under 42 U.S.C. § 1985(3), the plaintiff must allege "(1)
> a conspiracy; (2) motivated by a racial or class based discriminatory animus
> designed to deprive, directly or indirectly, any person or class of persons . . .
> [of] the equal protection of the laws; (3) an act in furtherance of the conspiracy;
> and (4) an injury to person or property or the deprivation of any right or privilege
> of a citizen of the United States."

*Id.* at 253-254 (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)).

In their motion and supporting brief, Defendants argue that "Plaintiff has alleged that

the actions were directed against her and not as a member of some class or race. As such

Plaintiff's allegations fail as a matter of law."  (Defs.' Br. in Supp., at 11.)  The Court,

however, notes that Count V (1) incorporates the Complaint's many allegations of gender-

based discrimination (Compl. ¶ 68) and (2) presents a claim for conspiracy to deny Plaintiff

"of rights and privileges granted by law and equal protection of the laws, *including Title VII*

*of the Civil Rights Act of 1964*, as amended, as well as freedom to petition, of speech, of

15

association and residence" (*Id*. ¶ 69, emphasis added.)  Moreover, Count V also alleges that "Defendants intentionally and knowingly engaged in a course of conduct geared toward depriving plaintiff of equal protection of the laws, *including Title VII of the Civil Rights Act of 1964*, as amended"  (*Id*. ¶ 70, emphasis added.)   Thus, the Court finds that Plaintiff's Complaint clearly alleges a conspiracy by the Defendants to deprive her of legal rights because she is a member of the female gender, a class of persons clearly constituting a protected class under § 1985(3). *See*, *e.g. Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1244 (3d Cir. 1978) (en banc), vacated on other grounds, 442 U.S. 366 (1979); *Libertad v. Welch*, 53 F.3d 428, 449 (1st Cir. 1995); *National Org. for Women v. Operation Rescue*, 914 F.2d 582, 585 (4th Cir. 1990); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir. 1989), *cert. denied*, 495 U.S. 947 (1990); *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir. 1988).  Accordingly, the Court must determine whether the Plaintiff "has failed to make a sufficient showing of an essential element of her [conspiracy claim]."  *See Celotex*, 477 U.S. at 323.

The Defendants, however, go no further than stating that the Plaintiff failed to properly allege conspiracy, and do not argue that the Plaintiff failed to present sufficient evidence to support her claim.  However, for the reasons the Court has already detailed in the prior sections of this Memorandum, Plaintiff has failed to present evidence that Defendants Throop Borough, Lukasewicz, Barone, and Musewicz either discriminated against Plaintiff or denied her equal protection of the laws due to her female gender.  Plaintiff has, however, through the presentation of evidence, raised questions of fact that could lead a reasonable jury to determine that Defendants Barnick and Hegedus discriminated against Plaintiff and/or denied her the equal protection of the laws due to her female gender.  On this basis, the

16

Court finds that the Plaintiff has alleged a conspiracy motivated by a class-based discriminatory animus designed to deprive her of equal protections of the law, and has elicited sufficient evidence that a reasonable jury could find that Defendants Barnick and Hegedus deprived Plaintiff of a right guaranteed to her as a citizen of the United States. *See Ridgewood Board of Education*, 172 F.3d at 253 (quoted *supra*). Accordingly, the decisive question before the Court is whether Plaintiff has alleged an act in furtherance of the conspiracy. *See Id.*

Having extensively reviewed the many volumes of deposition testimony and other evidence provided in this case, the Court notes that Plaintiff has stated that Defendant Hegedus asked her to drop her EEOC complaint against Defendant Barnick and the Borough. Defendant Hegedus expressly denies making this request. (Sept. 11, 2008 Hegedus Dep. Tr., at 60:25-61:5; 182:23-185:5.) Construing the evidence in a light most favorable to Plaintiff, the Court finds that these conflicting accounts raise a question of material fact concerning whether Defendants Hegedus and Barnick pressured Plaintiff to drop her EEOC claims against Barnick and the Borough–an act conceivably "in furtherance" of a conspiracy to deprive Plaintiff of her equal protection rights. Since a reasonable jury, when presented with this evidence, could decide that Defendant Hegedus and Barnick conspired to violate Plaintiff's equal protection rights, the Court will deny Defendants' motion with respect to Plaintiffs gender-related Count V claims as they pertain to Defendants Barnick and Hegedus. The Court finds, however, that the Plaintiff has not alleged or provided evidence of any other act "in furtherance" of a conspiracy by any of the other individually-named Defendants to deprive Plaintiff of her right to equal protection of the laws. Likewise, Plaintiff has not provided any evidence that Defendant Throop Borough, as part

17

of a policy or custom, took any act "in furtherance" of such a conspiracy. Thus, the Court will grant Defendants' motion with respect to Plaintiff's gender-related Count V claims as they pertain to Defendants Throop Borough, Lukasewicz, Barone, and Musewicz.

The Court further observes that, in response to Defendants' arguments concerning Count V,  Plaintiff argues that the evidence in this case would cause any reasonable jury to conclude that "she was the victim of a conspiracy to violate [her constitutional] rights," and supports this argument by citing to evidence involving the political atmosphere in Throop between from 2003 through 2005.  (Pl.'s Br. in Opp., at 9-13.)  When discussing what constitutes a class under § 1985(3), the First Circuit Court of Appeals stated that a cognizable class:

> must be identifiable by reference to "something more than . . . [the members'] desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). In other words, the line drawn by the substantive characteristic must divide individuals into distinct, separate, and identifiable groups. This means, for example, "white" as opposed to "non-white," *see, e.g., Stevens v. Tillman*, 568 F. Supp. 289, 293 (N.D. Ill. 1983) (holding that whites constitute a protected class under § 1985(3)), "female" as opposed to "male," *see, e.g., Libertad v. Welch*, 53 F.3d 428, 449 (1st Cir. 1995) (holding that women constitute a protected class under § 1985(3)), or, if political classes are includable . . . "registered Republicans" as opposed to other voters, see, e.g., *Keating v. Carey*, 706 F.2d 377, 379 (2d Cir. 1983) (holding that Republicans constitute a protected class under § 1985(3)).
>
> . . .
>
> [T]herefore, . . . a class is cognizable for purposes of § 1985(3)'s class-based animus requirement only when it is comprised of a distinctive and identifiable group. For this purpose, distinctiveness connotes that a reasonable person can readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not. *See Rodgers v. Tolson*, 582 F.2d 315, 318 (4th Cir. 1978) (rejecting alleged class partly because it was "impossible to determine who besides the [plaintiffs] belong to this class" and because the plaintiffs had failed to identify "a larger group that could be objectively identified by an observer"); *Bricker v. Crane*, 468 F.2d 1228, 1233 (1st Cir. 1972) (noting

> that a class must be "readily recognizable" in order to come within the scope of
> § 1985(3)), cert. denied, 410 U.S. 930, 35 L. Ed. 2d 592, 93 S. Ct. 1368 (1973).

*Aulson v. Blanchard*, 83 F.3d 1, 5 (1st Cir. 1996).  This understanding of what constitutes a cognizable class was adopted by the Third Circuit Court of Appeals in *Farber v. City of Paterson*, 440 F.3d 131, 135-137 (3d Cir. 2006).

In her arguments responding to Defendants' Motion for Summary Judgment, Plaintiff points to evidence supporting her argument that the Defendants conspired against her because she supported a rival political faction in the Throop Borough Council elections. While Plaintiff does, in her briefs and other pleadings, note that other Throop residents, including her husband and other family members were supporters of this political faction, this group is wholly indeterminate.  In other words, there is simply no way to characterize this group as an identifiable segment of the community by reference to any objective criteria, and, hence, it cannot serve as a cognizable class within the purview of § 1985(3).  Since Plaintiff has not articulated a cognizable class with respect to her claims that Defendants conspired to deprive her equal protection of the laws on the basis of her support of certain political candidates, Defendants are entitled to judgment as a matter of law with respect to these claims.  For this reason, the Court will grant Defendants Motion for Summary Judgment with respect to Plaintiff's Count V claims alleging that Defendants conspired to violate her right to equal protection of the laws due to Plaintiff's political affiliations.

## IV.    Counts VI and VII: 42 U.S.C. § 1983 Retaliation

In Count VI of her Complaint, Plaintiff brings claims pursuant to 42 U.S.C. § 1983 alleging that the Individual Defendants took action "to retaliate against Plaintiff for opposing them and their ticket during the 2005 election and petitioning against them, and . . . to create

a vacancy to be filled by . . . their own political associate." (Compl. ¶ 74.)  Plaintiff further

alleges in Count VII that the alleged retaliation by the Individual Defendants constitutes the

custom and policy of Throop Borough.  (*Id.* ¶ 78.)

"In order to plead a retaliation claim under the First Amendment, a plaintiff must

allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person

of ordinary firmness from exercising his constitutional rights, and (3) a causal link between

the constitutionally protected conduct and the retaliatory action."  *Thomas v. Independence*

*Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Connors v. Connors*, No. 3:07-CV-2186, 2008 U.S.

Dist. LEXIS 37610, at *10 (E.D.Pa. May 7, 2008) (J. Caputo).

In their Brief in Support, Defendants argue that,

the only competent summary judgment evidence of record establishes [sic] that
Plaintiff suffered from retaliation was her own assumption that she was being
treated differently because of her sex/political ties, when the record reveals that
each claimed action undertaken by Defendants was due to Plaintiff's conduct.

In the absence of a causal connection between Plaintiff's beliefs and
allegiances and any adverse employment action, there is no First Amendment
claim.

(Defs.' Br. in Supp., at 13-14.)  In support of this argument, Defendants state that the only

evidence offered in support of Plaintiff's arguments involves the September 2005 incident

when Plaintiff was accused of accessing Throop bank records from her home computer after

she did, indeed, attempt to access the records while she was on sick leave.  The Court,

however, finds that the Defendants' argument simply states a legal conclusion without

appropriate reference to the voluminous evidence collected during discovery in this case.

In its review of the evidence presented, the Court notes that the deposition testimony

of the Defendants indicates that they were well aware of Plaintiff's political activities and

associations. (July 28, 2008 Barnick Dep. Tr., Doc. 73, Ex. 12, at 12:4-13:3;  Aug. 28, 2008 Lukasewicz Dep. Tr., Doc. 73, Ex. 8, at 45:15-47:21; July 30, 2008 Barone Dep. Tr., Doc. 73, Ex. 1, at 148:12-19; Sept. 11, 2008 Hegedus Dep. Tr., Doc. 73, Ex. 18, at 18:4-13; Aug. 28, 2008 Musewicz Dep. Tr., Doc. 73, Ex. , at 10:25-11:11.)  Furthermore, the Court believes that the deposition testimony in this case suggests that other Throop Borough employees questioned whether employment decisions in Throop during the period in question were motivated by politics.  (Sept. 4, 2008 Lukasewicz Dep. Tr., at 72:4-73:11, 79:5-80:15, 258:4-10; July 28, 2008 Barnick Dep. Tr., at 43:3-21; July 30, 2008 Barone Dep. Tr., at 60:13-61:4; Sept. 11, 2009 Hegedus Dep. Tr., at 83:7-22; July 24, 2008 Morrell Dep. Tr., Doc. 73, Ex. at 14:19-18:10).  Moreover, in their depositions many of the Defendants acknowledged that they were aware of Plaintiff's EEOC filings.  (July 30, 2008 Barone Dep. Tr., at 44:10-14; Aug. 28, 2008 Musewicz Dep. Tr., at 19:11-18; July 28, 2008 Barnick Dep. Tr., Doc., at 17:11-20:1.)

As noted, the Court also observes that Plaintiff's deposition testimony details an increasingly adverse relationship between herself and the Defendants causing her to feel increasingly uncomfortable in her employment with Throop. (*See* Sept. 18, 2008 Hartshorn Dep. Tr., at 89:8-90:4, 94:18-103:6, 104:15-105:12, 112:18-117:1, 140:18-142:4, 163:17-165:5; Oct. 7, 2008 Hartshorn Dep. Tr., Doc. 73, Ex. 4, at 46:2-47:17, 57:25-58:6.)  This testimony also indicates that several of the Individual Defendants actively campaigned against her when she ran for the elected office of School Board Director in 2005.  (Oct. 7, 2008 Hartshorn Dep. Tr., at 52:17-57:13.)

In light of this evidence, the Court believes that substantial questions of material fact remain concerning whether the individually-named Defendants retaliated against Plaintiff

either on the basis of her political views or due to her EEOC filings.  Likewise, the Court finds

that a reasonable jury could return a verdict for the Plaintiff on the basis of the evidence that

has been presented in this case and summary judgment is not appropriate on Plaintiff's

Count VI claims against the individually-named Defendants.

However, the Court also finds that, in spite of Plaintiff's allegations that the alleged

retaliation in this case occurred pursuant to Borough custom or policy, the presented

evidence does not support these allegations. Instead, after reviewing all of the facts and

evidence that have been presented, the Court finds that the alleged retaliatory actions taken

by the Defendants in this case were isolated incidents arising out of Plaintiff's clearly

antagonistic relationship with the individually-named Defendants.   Thus, the alleged

retaliatory conduct was  not the product of a policy, practice or custom of the Borough of

Throop.  *See Monell*, 436 U.S. at 691 (holding that municipalities can be held liable under

42 U.S.C. § 1983 only when a government policy or custom inflicts injury).  For this reason,

the Court will grant Defendants' motion with respect to Count VII of Plaintiff's Complaint.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment will be

granted in part and denied in part.  With respect to Plaintiffs Count I, II, III and IV claims, the

Court will grant the motion with respect Defendants Throop Borough, Lukasewicz, Barone,

and Musewicz, and will deny the motion with respect to Defendants Barnick and Hegedus.

With respect to Plaintiff's Count V claims relating to gender, the Court will grant Defendants'

motion with respect to Defendants Throop Borough, Lukasewicz, Barone, and Musewicz,

and will deny the motion with respect Defendants Barnick and Hegedus.  With respect to

Plaintiff's Count V claims relating to her political affiliation, the Court will grant Defendants'

motion with respect to all Defendants.  The Court will deny Defendants' motion with respect to Plaintiff's Count VI claims against the individually-named Defendants, and finally, the Court will grant Defendant's motion with respect to Plaintiff's Count VII claim against the Defendant Borough.

The remaining claims in this case are Plaintiff's Count I, II, III, and IV claims against Defendant Barnick, Plaintiff's gender-related Count V claims against Defendants Barnick and Hegedus, and Plaintiff's Count VI claims against all individually-named Defendants.  As none of Plaintiff's remaining claims pertain to the Defendant Borough, the Court will dismiss Defendant Throop Borough from this action.

An appropriate Order follows.


 April 2, 2009                                                        /s/ A. Richard Caputo
Date                                                                     A. Richard Caputo
                                                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CHRISTINE HARTSHORN

       Plaintiff,

          v.

THROOP BOROUGH, ET AL.,

       Defendants.

CIVIL ACTION NO. 3:07-cv-01333

(JUDGE CAPUTO)

## ORDER

**NOW**, this 2nd  day of April, 2009, **IT IS HEREBY ORDERED** that Defendants'
Motion for Summary Judgement (Doc. 67) is **GRANTED** in part and **DENIED** in part as
follows:

(1)    Defendants' motion is **GRANTED** with respect to Counts I, II, III, and IV of Plaintiff's
Complaint insofar as those claims pertain to Defendants Throop Borough,
Lukasewicz, Barone, and Musewicz;

(2)    Defendants' motion is **DENIED** with respect to Counts I, II, III, and IV of Plaintiff's
Complaint insofar as those claims pertain to Defendants Barnick and Hegedus;

(3)    Defendants' motion is **GRANTED** with respect to the gender-related claims in Count
V of Plaintiff's Complaint insofar as those claims pertain to Defendants Throop
Borough, Lukasewicz, Barone, and Musewicz;

(4)    Defendants' motion is **DENIED** with respect to the gender-related claims in Count V
of Plaintiff's Complaint insofar as those claims pertain to Defendants Barnick and
Hegedus;

(5)     Defendants' motion is **GRANTED** with respect to the politics-related claims in Count

        V of Plaintiff's Complaint with regard to all Defendants.

(6)     Defendants' motion is **DENIED** with respect to Count VI of Plaintiff's Complaint;

(7)     Defendants' motion is **GRANTED** with respect to Count VII of Plaintiff's Complaint;

(8)     Defendant Throop Borough is **DISMISSED** from this case.


                                        /s/ A. Richard Caputo
                                        A. Richard Caputo
                                        United States District Judge